**FILED**
**Jan 29, 2024**
**12:03 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **CHRISTOPHER HOLLOWAY,** | ) | **Docket No.: 2023-07-2338** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **NATCHEZ TRACE YOUTH** | ) | **State File No. 94215-2021** |
| **ACADEMY** | ) | |
| **Employer,** | ) | |
| **And** | ) | **Judge Robert Durham** |
| | ) | |
| **AIU INSURANCE CO.,** | ) | |
| **Insurance Carrier.** | ) | |

---

## COMPENSATION ORDER GRANTING BENEFITS

---

The Court held a Compensation Hearing on January 4, 2024, to determine the appropriate impairment rating for Mr. Holloway's permanent disability and his entitlement to increased benefits. Mr. Holloway contended his benefits should be based on an impairment that includes left-knee arthritis, not just a meniscal tear, and that he could not return to work. The Court holds the appropriate rating is one percent based on the meniscal tear only and that Mr. Holloway is entitled to increased benefits.

### History of Claim

Mr. Holloway, age 47 with a high school education, suffered a left-knee injury while breaking up a fight between two teens on December 15, 2021. He received unauthorized emergency room care that day. The history revealed that Mr. Holloway said he had knee pain for two or three months, but the incident caused his pain to worsen. X-rays revealed "tricompartmental joint space narrowing and osteophyte spurring." He was returned to work but also was advised to follow up with an orthopedist.

Mr. Holloway then received authorized treatment on February 24, 2022, at a walk-in clinic. X-rays showed "mild tricompartmental arthritis." He eventually had an MRI that

1

showed a "loose body" in the back of the medial compartment as well as a cartilage deficit.

Natchez Trace then authorized treatment with orthopedic surgeon Dr. Kyle Stephens, who saw Mr. Holloway in April. Dr. Stephens noted Mr. Holloway was deaf, making communication difficult. X-rays again identified "mild" patellofemoral and medial joint arthritis.

When conservative treatment failed, Dr. Stephens surgically repaired a torn meniscus, removed the loose body, and smoothed out unstable cartilage. During surgery, he observed areas of full cartilage loss in both the patellofemoral and medial compartments.

Dr. Stephens felt Mr. Holloway recovered well, and he released him to return to work without restrictions in October. He placed Mr. Holloway at maximum medical improvement and assigned a one percent impairment for the meniscal tear only on January 3, 2023.

Dr. Stephens testified that the meniscal tear and the loose chondral body were primarily due to the fall at work. He also attributed some of the "rough" cartilage edges he smoothed out to the injury. Further, he unequivocally said the injury "contributed more than fifty percent to the aggravation of [Mr. Holloway's] pre-existing arthritis." Still, he awarded an impairment for the meniscal tear only because he believed that the "bone on bone" arthritis existed before the injury based on the x-rays, MRI, and his observations during surgery. Thus, he believed that an impairment for arthritis, as well as any further treatment for it, would not be work-related.

Given Dr. Stephens's opinion, Mr. Holloway's counsel obtained an evaluation from orthopedic surgeon Dr. Lawrence Schrader. Dr. Schrader believed that all, or at least most, of Mr. Holloway's arthritis is "post-meniscectomy or post-traumatic." He based this belief on Mr. Holloway's assertion that he was asymptomatic before the fall and on the immediate post-injury x-ray reports. He conceded that the reports showed Mr. Holloway had some preexisting arthritis, but he discounted this fact because they defined the arthritis as "mild." He contrasted these findings with Dr. Stephens's surgical findings of severe arthritis some months later, which corroborated his own x-ray findings. He also found it significant that Mr. Holloway had more cartilage in his uninjured right knee than the left, again suggesting the arthritis was post-traumatic and not simply degenerative.

Dr. Schrader felt that Mr. Holloway's cartilage loss due to arthritis significantly worsened in the months-long interval between his fall and surgery. He also believed that the meniscectomy and chondroplasty further damaged the cartilage. Thus, he was confident in saying the injury primarily caused Mr. Holloway's arthritis and assigned a seven percent impairment rating.

Because of the differing opinions, the parties agreed to use the Medical Impairment

2

Rating Registry and agreed for orthopedic surgeon Dr. Kurtis Kowalski to give an impairment opinion. Dr. Kowalski did not believe the injury primarily caused the arthritis, nor did he believe the chondroplasty contributed to it. He based this belief on the post-injury x-ray findings of arthritis and on the fact that the meniscal repair did not temporarily alleviate Mr. Holloway's symptoms, as it should have if the arthritis developed post-traumatically. He also found it significant that arthritis was in all three knee compartments and was "end-stage" in both the patellofemoral and the medial. He said if trauma had primarily caused the arthritis, it would only be severe in the medial compartment where the tear occurred.

Dr. Kowalski said the injury "got the ball rolling" as to Mr. Holloway's symptoms, but he maintained that the aggravation was only an increase in pain. He said the arthritis itself preexisted the injury, which differed from Dr. Schrader's opinion. Thus, he agreed with Dr. Stephens as to the arthritis and assessed a one percent impairment based only on the meniscal tear.

He explained that Natchez Trace is a school and home for troubled teenage boys. His job required him to monitor and control the boys' behavior during school hours and he had to stand, climb stairs, and walk outside the building. He said he had no knee pain before the incident and believed the emergency room record stating otherwise was in error because he did not have an interpreter during that treatment.

He testified he worked nights while on light duty after his injury which allowed him to periodically check the rooms and then sit down. That allowed him to work because it required less walking and standing. After Dr. Stephens returned him to full duty on October 6, Natchez Trace offered to return him to work on the day shift. However, Mr. Holloway did not feel he could return to that job because of his knee, so he resigned without attempting the job. He admitted that he did not personally tell anyone at Natchez Trace he was resigning or ask if he could remain on the night shift. He also did not seek restrictions from Dr. Stephens.

He attempted to work for another employer in manufacturing as a machine operator in mid-August but only worked for a month, citing an inability to stand and walk for as long as the job required. He is currently monitoring students at a school for the deaf in Texas, where he can sit most of the time.

Other than the emergency room report, Natchez Trace offered no evidence that Mr. Holloway suffered from knee pain before his work injury. It also submitted no evidence that it could have offered accommodations for full duty work if Mr. Holloway had asked.

3

**Findings of Fact and Conclusions of Law**

Mr. Holloway has the burden of proving the essential elements of his workers' compensation claim by a preponderance of the evidence. Tenn. Code. Ann. 50-6-239(c)(6) (2023). In this case, the parties agreed on all issues but two—Mr. Holloway's permanent disability from his work-related injury and his entitlement to increased benefits. Each issue shall be considered in turn.

*Permanent Disability*

In this case, the doctors all agreed that Mr. Holloway suffered a work-related meniscal tear in his left knee resulting in a permanent impairment and that he suffers from severe arthritis. They disagreed as to whether Mr. Holloway's fall primarily caused his arthritis and current symptoms.

When weighing expert opinions, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examinations, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Here, all three doctors are orthopedic surgeons with years of experience in treating and evaluating workers' compensation patients, and the Court finds none of them hold a significant advantage in qualifications. As for the circumstances of their examinations, Dr. Stephens was Mr. Holloway's authorized treating physician, and his causation opinion is presumed correct. Tenn. Code Ann. § 50-6-102(12)(E). He also had the chance to see inside the knee before surgery altered it. The Appeals Board has affirmed a trial court giving greater weight to the causation opinion of an authorized treating physician who performed surgery and saw the employee's lack of progress with conservative care firsthand. *Smith v. TrustPoint Hosp., LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 6, 2021). Those circumstances favor Dr. Stephens's opinion on causation.

Regarding Dr. Kowalski, section 50-6-204(d)(4) gives a presumption of correctness to his opinion on impairment, not causation. However, his causation opinion is admissible and must be weighed the same as any other qualified doctor's opinion. *Courier Printing Co. v. Sims ex rel. Bly*, No. M2010-01279-SC-WCM-WC, 2011 Tenn. LEXIS 625, at *6 (Tenn. Workers' Comp. Panel July 15, 2011).

As for the opinions themselves, Dr. Schrader's opinion that all, or at least most, of Mr. Holloway's arthritis is post-traumatic is not persuasive. Drs. Stephens was confident that the arthritis existed before the injury. X-rays taken the day of the accident showed arthritis throughout the knee. And as noted, unlike Dr. Schrader, Dr. Stephens had an opportunity to observe the arthritic knee during surgery. Further, Dr. Kowalski's

4

conclusion is compelling: that, since Mr. Holloway had severe arthritis in his patellofemoral compartment that the meniscal tear could not have caused, the arthritis was not post-traumatic. Thus, the Court holds that Mr. Holloway did not prove by a preponderance of the evidence that his work injury caused his arthritis.

However, that does not end the inquiry. Both Dr. Stephens and Dr. Kowalski said that although the injury did not cause Mr. Holloway's arthritis, it did aggravate it. Section 50-6-102(12) says that an aggravation is compensable if it can be shown to a reasonable degree of medical certainty that the injury contributed more than 50% in causing "disablement or the need for surgery."

Both doctors testified that the accident aggravated the arthritic symptoms, or in Dr. Kowalski's words, "got the ball rolling." But they also said the preexisting arthritis, *not the injury*, was the primary reason for Mr. Holloway's current disablement and his need for future treatment, including a probable knee replacement.

These facts are similar to *Edwards v. Peoplease, LLC*, 2022 TN Wrk. Comp. App. Bd. LEXIS 13, at *24, 25 (Mar. 18, 2022). There, the employee was previously asymptomatic but suffered an aggravation of preexisting arthritis in both knees. The arthritis caused the need for bilateral knee replacements. The Appeals Board held that while the employee proved entitlement to treatment for the aggravation, she did not prove that the accident primarily caused her need for knee replacements.

Here, the Court also finds Mr. Holloway's fall did not primarily cause either the arthritic condition or his current disablement. Thus, the fall did not cause a compensable aggravation. It follows then that Mr. Holloway did not overcome the presumption given to Dr. Kowalski's one percent impairment rating, meaning Mr. Holloway sustained a one percent permanent partial disability from his injury.

*Increased Benefits*

The next issue is whether Mr. Holloway is entitled to increased benefits because he did not return to work for Natchez Trace. Under section 50-6-207(3)(B), the Court, "if appropriate," may award an employee increased benefits if he does not return to work at a pre-injury wage at the end of his compensation period or 180 days after he reached maximum medical improvement, whichever is later.

With a one percent impairment, the initial benefit period would have expired four and one-half weeks after Mr. Holloway reached maximum medical improvement. Thus, the 180-day period applies, and it expired on July 2, 2023. The undisputed testimony is that Mr. Holloway did not return to work at a wage equal to or greater than his pre-injury wage until mid-August 2023, when he began factory work.

5

However, the question remains whether increased benefits are "appropriate." Section 50-6-207(3)(D)(i) says that an employee who voluntarily resigns may not receive increased benefits unless the resignation results from the work-related disability. In making this determination, all relevant factors must be considered, "including the circumstances of an injured employee's ability and/or willingness to return to work in his or her disabled state and the reasonableness of the employer in attempting to return the injured employee to work." *Wright v. Tenn. CVS Pharm.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 72, at *12 (Oct. 31, 2019).

While treating for his injury, Mr. Holloway worked light duty on the third shift, which only required him to occasionally make rounds and check on the boys' dorm rooms. Otherwise, he could sit down. When Dr. Stephens released him to return to work at full duty in October 2022, Natchez Trace offered Mr. Holloway his original day shift, which required more walking, stair climbing, and going outside. It would also expose him to additional risk in his interactions with the boys if asked to handle disturbances and fights.

Mr. Holloway testified he did not believe he could work the day shift and did not attempt to do so. He also admitted that he did not talk to Natchez Trace about possibly continuing to work the night shift or if it could make other accommodations. Instead, he resigned saying he could not work due to his injury. However, Natchez Trace did not offer any evidence that it reached out to Mr. Holloway about possible accommodations or which accommodations it could have made had Mr. Holloway asked.

Mr. Holloway confirmed his inability to stand or walk for extended periods when he tried to work as a machine operator for a factory several months later. After a month, he had to quit because of his difficulty standing and walking. His current job allows him to sit most of the time.

Considering all these circumstances, the Court finds Mr. Holloway was unlikely to return to work at full duty and was reasonable in his decision not to try. Thus, an award of increased benefits under section 50-6-207(3)(B) is appropriate. Mr. Holloway is entitled to a multiplier of 1.35 since he did not return to work, and an additional multiplier of 1.2 since he was over 40 at the time of his injury.

IT IS, THEREFORE, ORDERED THAT:

1. Natchez Trace shall pay Mr. Holloway an award of permanent partial disability benefits based on a one percent permanent medical impairment at the compensation rate of $884.67, or $3,981.02. Natchez Trace shall also pay increased benefits in the amount of $2,468.22 for a total lump-sum award of $6,449.24.

2. Mr. Holloway's counsel shall receive an attorney's fee of twenty percent of the award, or $1,289.84.

3. Natchez Trace shall pay for reasonable, necessary, and related medical treatment for Mr. Holloway's work-related injury of December 15, 2021.

4. Natchez Trace shall pay court costs of $150.00 to the Court Clerk within five business days of this order becoming final. Mr. Holloway may also file a motion for reasonable litigation expenses.

5. Natchez Trace shall prepare and file with the Court Clerk a Statistical Data Form within 10 business days of the date this order becomes final.

6. This Compensation Order is an adjudication on the merits. Unless appealed, this order becomes final in 30 days.

**ENTERED January 29, 2024.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**


**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Mr. Holloway's Witness and Exhibit List
4. Mr. Holloway's Pre-Trial Brief
5. Natchez Trace's Witness and Exhibit List
6. Natchez Trace's Pre-Trial Brief

Exhibits:
1. Dr. Stephens's deposition with attached exhibits
2. Dr. Schrader's deposition with attached exhibits
3. Dr. Kowalski's deposition with attached exhibits
4. Wage records
5. Mr. Holloway's Notice of Filing Medical Records
6. Natchez Trace's Notice of Filing Medical Records
7. Letter of Resignation
8. Mr. Holloway's deposition

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on January 29, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Jeffrey Boyd, Employee's Attorney | | | X | jboyd@borenandboyd.com scallison@borenandboyd.com |
| Houston Gunn, Employer's Attorney | | | X | hmgunn@mijs.com inhoward@mijs.com |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____

*[Signature of appellant or attorney for appellant]*